UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JUAN CARLOS CRUZ-CALIX, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00306-JRS-MG |
| | ) | |
| BRISON SWEARINGEN, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Mr. Juan Carlos Cruz-Calix is a noncitizen who was arrested by U.S. Immigration and Customs Enforcement ("ICE") officials on April 27, 2026, and is detained at the Clay County Jail in Brazil, Indiana. Mr. Cruz-Calix now petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody or a bond hearing. Dkt. 1 at 12.

For the reasons explained below, the Court denies the petition and Mr. Cruz-Calix's emergency motions.

## I. Background

Mr. Cruz-Calix is a citizen of Honduras who entered the United States without inspection approximately 20 years ago. Dkt. 1 at 1; dkt 11-1 at 4. When he first entered the country in 2005, he was arrested by a U.S. Customs and Border Protection officer and granted voluntary return the same day. Dkt. 11-1 at 4. In 2010, ICE encountered Mr. Cruz-Calix at the Marion County Jail, and he was subsequently issued a Notice to Appear ("NTA"), which initiated removal proceedings against him. *Id*. He was then released on his own recognizance. *Id*. The immigration court in

Chicago, Illinois, issued an order of removal in absentia on August 9, 2011, which Mr. Cruz-Calix did not appeal, making it a final order of removal. Dkt. 11-2; dkt. 11-3.

Mr. Cruz-Calix's wife is the victim of human trafficking, and in January 2025 she filed applications for herself and her husband to receive T visas enabling them to remain in the United States. Dkt. 1 at 8. Those applications remain pending. *Id*. at 14.

On April 27, 2026, ICE arrested Mr. Cruz-Calix pursuant to an administrative Warrant of Arrest (Form I-200) and Warrant of Removal/Deportation (Form I-205) after U.S. Citizenship and Immigration Services ("USCIS") notified the agency that he had a final order of removal and an interview scheduled. Dkt. 11-1 at 4; dkt. 11-3 at 1. The government cancelled Mr. Cruz-Calix's release on recognizance and took him into custody. Dkt. 11-1 at 4.

## II.    Analysis

Mr. Cruz-Calix claims that his detention violates the Due Process Clause of the Fifth Amendment because his in absentia removal order was invalid due to lack of notice (Count I); his removal is not reasonably foreseeable (Count II); his arrest at his USCIS appointment violated 8 U.S.C. § 1367 (Count III); he is entitled to a mandatory stay of removal under INA § 237(d) (Count IV); and he has not been provided with a bond hearing (Count V). Dkt. 1 at 11-21. Respondents argue that, because Mr. Cruz-Calix is subject to a final order of removal, this Court lacks jurisdiction to bar his removal; that the government has the discretion to deny his stay of removal; that his arrest was lawful; that detention without bond is authorized under 8 U.S.C. § 1231; and that his detention is constitutional. Dkt. 11.

### A. The Court lacks jurisdiction over Mr. Cruz-Calix's Defective NTA and Automatic Stay Claims

Mr. Cruz-Calix argues that his in absentia removal order is invalid because the February 17, 2010, NTA he was issued did not indicate the date or time at which he was required to appear

before the immigration court. *See* dkt. 1-7. As a result, he was unable to contest the removal charges for lack of notice, which requires rescission of the in absentia removal order.

By statute, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Following the Supreme Court, the Seventh Circuit determined that § 1252(g) bars a district court's judicial review of "the three listed decisions or actions." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021) ("[§ 1252(g)] does not sweep broadly; only challenges to the three listed decisions or actions—to commence proceedings, adjudicate cases, or execute removal orders— are insulated from judicial review.") (citing *Reno v. American-Arab Anti–Discrimination Comm. (AAADC)*, 525 U.S. 471, 482 (1999)).

Here, Mr. Cruz-Calix challenges the validity of his 2010 NTA, the document that "commenced" his proceedings. He also thereby challenges the validity of the immigration court's adjudication of his case and the government's execution of the final removal order. As such, § 1252(g) precludes this court's jurisdiction over Mr. Cruz-Calix's Defective NTA Claims.

Similarly, Mr. Calix-Cruz argues that several statutory and regulatory provisions entitle him to automatic stays of his removal. Whether or not these claims are meritorious, they are unrelated to his detention, which as explained below is governed by other statutory provisions. Rather, his automatic stay claims implicate the government's decision or action to execute the final removal order. As a result, 1252(g) precludes this court's jurisdiction.

**B. Mr. Cruz-Calix's detention is lawful, and he is not entitled to a bond hearing**

Mr. Cruz-Calix seeks release from ICE custody or a bond hearing on grounds that his detention violates the Fifth Amendment's due-process protections and 8 U.S.C. § 1231, which directs the Attorney General to detain an alien ordered removed from the country for an initial

removal period and grants the Attorney General discretion to detain the alien under certain circumstances thereafter.

"[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). An alien "may be detained beyond the removal period" only in three limited circumstances. 8 U.S.C. § 1231(a)(6). Mr. Cruz-Calix disputes that his removal order is valid, but he does not dispute that, if it is valid, it is a final order of removal. He maintains that the 90-day removal period has expired and that he is subject to discretionary detention (and therefore eligible for release) under § 1231(a)(6).

Although § 1231(a)(6) grants the Attorney General discretion to extend post-removal period detention, that discretion is limited by the Fifth Amendment's due process clause. *Zadvydas v. Davis*, 533 U.S. 678, 690–96 (2001). In *Zadvydas*, the Supreme Court found that Congress granted the Attorney General authority to detain aliens under § 1231 for the express purpose of facilitating their removal. *Id.* at 697. Accordingly, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

A court faced with a habeas petition like this one "must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.* If not, "the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700. The government may remove aliens subject to final removal orders, and it may detain them to facilitate removal, but it may not detain them indefinitely with no end in sight.

"The remedy for a *Zadvydas* claim is generally release of the habeas petitioner under conditions of supervision." *See Khan v. Gonzales*, 481 F. Supp. 2d 638, 643 (W.D. Tex. 2006) (granting habeas petitioner's *Zadvydas* claim and ordering he be released subject to an order of

supervision); *Gomez Barco v. Witte*, No. 6:20-CV-00497, 2020 WL 7393786, at \*1 (W.D. La. Dec. 16, 2020) (same).

Mr. Cruz-Calix argues that his removal is not foreseeable because he has numerous meritorious defenses in his underlying removal case. Amongst other defenses, he lists a motion to reopen and rescind his removal order, his pending T-Visa application, and a mandatory statutory stay of his removal. Mr. Cruz-Calix, however, has not shown that any of these remedies have been granted to him. At this point, they are merely speculative, whereas his final order of removal remains in effect and is unreachable by this Court. Moreover, Mr. Cruz-Calix has indicated to the Court in his several filings that the government is poised to remove him at the earliest opportunity. Because 8 U.S.C. § 1231 governs Mr. Cruz-Calix's detention, he is not entitled to a bond hearing, and, since Mr. Cruz-Calix has only been detained since April 27, his detention is presumptively reasonable. Because Mr. Cruz-Calix concedes that the government is taking steps to quickly remove him, he cannot overcome the presumption that his detention is for the legitimate purpose of facilitating his reasonably foreseeable removal.

## C. Mr. Cruz-Calix's arrest did not violate 8 U.S.C. § 1367(a)(2)

Mr. Cruz-Calix argues that, as a T visa applicant, his arrest was unlawful because USCIS improperly shared his otherwise confidential information with ICE in violation of 8 U.S.C. § 1367(a)(1), (a)(2). Respondents insist that his arrest was lawful because his previous release on his own recognizance was properly revoked.

In pertinent part, Section 1367(a)(2) provides that "in no case" may DHS employees "permit use by or disclosure to anyone (other than a sworn officer or employee of the Department, or bureau or agency thereof, for legitimate Department, bureau, or agency purposes) of any

information" relating to an alien who is the beneficiary of an application for relief under certain provisions of the Immigration and Nationality Act. 8 U.S.C. § 1367(a)(1), (a)(2).

As the Southern District of California explained in another context, under Section 1367(a)(2), "[d]isclosure of information relating to an alien may only be made to: (1) certain nonprofits, government officials, and government agencies, for purposes related to immigration and security; and (2) the alien himself. *Roy, et al., v. Cnty. of Los Angeles*, No. CV129012BROFFMX, 2016 WL 11783814, at *2 (C.D. Cal. Nov. 18, 2016). Rather than "a prohibition against the use of the information by the government to prosecute, deport or otherwise penalize illegal aliens who applied for legalization . . . . Section 1367(a)(2) is manifestly a non-disclosure provision intended to shield sensitive information from the eyes of all but a select few." *Id*.

Here, USCIS shared otherwise confidential information with sworn DHS officers for legitimate DHS purposes related to immigration. Mr. Cruz-Calix has not shown that USCIS' handling or sharing of his confidential information with ICE violated statute or regulation such that it would constitute an unlawful arrest.

**D. Mr. Cruz-Calix's emergency motions**

During the pendency of his petition, Mr. Cruz-Calix filed a number of emergency motions requesting the Court grant immediate release from custody, restrain respondents from transferring him, and maintain jurisdiction during the pendency of his T Visa application and his motions to reopen and rescind his removal order. Dkts. 2, 7, and 14. For the reasons the Court discussed above, Mr. Cruz-Calix is not entitled to habeas relief, and his motions seek essentially the same remedies requested in his petition and make the same legal arguments. Moreover, as the Court has explained,

Mr. Cruz-Calix's pending immigration matters do not bestow jurisdiction on this Court to effectively stay his removal.

Last, Mr. Cruz-Calix seeks a contempt finding against respondents because he was almost removed from the country on April 30, the same day this Court issued its Order to Show Cause enjoining respondents from transferring him outside the Seventh Circuit or beyond U.S. jurisdiction. *See* dkt. 7. Mr. Cruz-Calix concedes in the same filing, however, that he was not in fact transferred contrary to the Court's order. *Id*. at 6-7. Mr. Cruz-Calix has offered no evidence that respondents have failed to comply with any of the Court's orders.

Accordingly, Mr. Cruz-Calix's emergency motions, dkts. [2], [7], and [14], are **denied**.

### III. Conclusion

For the reasons discussed above, Mr. Cruz-Calix's petition is **denied** and this action is **dismissed with prejudice.**

Mr. Cruz-Calix's emergency motions, dkts. [2], [7], and [14], are **denied**.

The **clerk is directed** to enter final judgment.

**IT IS SO ORDERED.**

Date: 5/15/2026

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel